## No. 12,759.

### A. L. JOHNSON VS. CITY OF NEW ORLEANS.

A judgment of non-suit does not support a plea of *res judicata*. Allinet vs. Creditors, 15 An. 130.

Holders of claims against the city of New Orleans, by the laws and ordinances under which the claims were created, entitled to payment only from and out of the funds appropriated to payment of such claims, are not entitled to an absolute judgment against the city. Johnson vs. The City of New Orleans, 46 An. 714.

Assuming that the funds applicable to the payment of claims of particular years out of the taxes of those years should have been illegally diverted and misapplied to the payment of the claims of later years, the effect thereof would not be to transform the mass of these qualified creditors into general creditors with the right to obtain absolute, general judgments against the city—nor authorize any particular one of these creditors to obtain such a judgment giving him superior rights to which he would not be entitled.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Chas. Louque* for Plaintiff, Appellant.

*James J. McLoughlin*, Assistant City Attorney, and *Saml. L. Gilmore*, City Attorney, for Defendant, Appellee.

Argued and submitted April 23, 1898.

Opinion handed down May 16, 1898.

---

The opinion of the court was delivered by

NICHOLLS, C. J.  Plaintiff avers, that he is the owner of claims due to him by the city of New Orleans, to the amount of thirty-two thousand five hundred and twenty-five dollars and ninety-eight cents.

That said claims have been recognized as due to him by said city (but no judgment has been rendered thereon) in the suit entitled A. L. Johnson vs. The City of New Orleans, No. 37,596 of the docket of the Civil District Court.

That said claims were incurred by the city of New Orleans during the years 1879, 1880, 1881, 1882, 1884, 1886 and 1887.

That he is entitled to recover an absolute judgment against the city for the reason, that said city has diverted the funds out of which petitioner was to be paid in many ways, some of which petitioner is able to mention, to-wit: paying the running expenses of the city of New Orleans during the years 1888 to 1894 with the funds of the above named years 1880 to 1886 and 1887, out of the taxes of 1880 three thousand two hundred and forty-one dollars and ninety-nine cents ($3241.99), of

| | |
|---|---:|
| 1881 | $2,206 81 |
| 1882 | 3,947 48 |
| 1884 | 6,662 96 |
| 1886 | 3,109 50 |
| 1887 | 5,900 00 |
| | $24,068 74 |

That in addition the said city has remitted a large amount of interest for said years contrary to law and the Constitution of the State for years.

| | |
|---|---:|
| 1880 | $20,003 00 |
| 1881 | 13,458 33 |
| 1882 | 80,280 00 |
| 1884 | 24,036 66 |
| 1886 | 30,783 00 |
| 1887 | 30,037 00 |
| | $148,587 99 |

That in addition to the above diversion of funds the said City Council made contracts with W. J. Comeford as collector for the above back taxes and allowed the sum of twenty per cent. on the amount collected; that said contract was *ultra vires*, because it allowed to said contractor, who was by virtue of his employment an officer of said city, a salary greatly in excess of $3500 per annum, and if said contractor was not a city officer he could be delegated no power to collect the taxes, the powers under the Constitution having been delegated to the treasurer of said city.

That a similar contract was made with J. W. Gurley, who was appointed and elected Assistant City Attorney, and in less than one year his fees amounted to more than fifty thousand dollars, all of

which sums were illegally and unlawfully taken from money which should have been used for the purpose of paying petitioner's claim.

That if all the taxes collected, and which should have been collected, had been honestly and legally applied to the indebtedness of the year, his claims would have been paid long ago. In view of the premises he prayed that there be judgment in his favor and against the city of New Orleans for the sum of thirty-two thousand five hundred and twenty-five dollars with legal interesi from January, 1888, and costs. Defendant excepted that plaintiff's petition disclosed no cause of action. It also pleaded *lis pendens* and *res judicata* and prayed that the suit be dismissed.

The District Court, "considering the decision of the Supreme Court in the case of A. L. Johnson vs. The City of New Orleans (No. 11,401), 46 An. 714," maintained the exception of no cause of action and *res judicata.*

Plaintiff appealed.

In the first suit of Johnson & Co. vs. The City of New Orleans, the plaintiff averred himself to be the holder and owner of the same claims on which he has based his present action. He alleged that the city of New Orleans had failed to pay said claims when due, but had ordinanced for same to be paid whenever there was money in the treasury of the city, not otherwise appropriated. His prayer was for judgment against the city for the amount of the claims with legal iuterest from judicial demand. The District Court rendered judgment in favor of the plaintiff to the extent that it recognized him as the owner of the claims against the city of New Orleans which were annexed to his petition, and sued for, but in other respects his suit was dismissed as in *case of non-suit.* Plaintiff appealed, and on appeal the judgment appealed from was affirmed. The exception of *lis pendens* and of *res judicata* were not well founded, and should have been overruled. The particular action then brought was ended by the judgments rendered. The only matter which was fully closed by the judgment was the fact that plaintiff was the owner of the claims declared upon. What plaintiff's rights as resulting from ownership were, or would be, was not determined. A judgment of non-suit does not support a plea of *res judicata.* Allinet vs. His Creditors, 15 An. 130.

The only difference between the petition in the present, and that in the former case, consists in plaintiff's having assigned as a reason

justifying his obtaining an absolute judgment against the city as a general creditor, that his claims were payable out of the taxes of certain years; that those taxes after having been collected by the city had been diverted and misapplied by illegal payments to other parties in manner and amount set out. We have examined the various ordinances adopted by the City Council recognizing and covering the claims held by plaintiff. They are substantially to the same effect. One of these will serve as a sample of them all.

No. 82, Counsel Series, reads as follows: "An ordinance for the payment of the several accounts therein named.

"Be it ordained, that the following appropriations be and they are hereby made for the month of December, 1892 (out of special supply fund), and that the comptroller warrant on the treasurer in payment of the same whenever there shall be money in the city treasury to the credit of the appropriate fund for such account and not otherwise appropriated."

(Below this follows a list of claims specifically described as to amounts and consideration for the same and as to the parties then holding them.)

In the opinion rendered by us in the former case, we said that "in no sense was the holder of such claims a general creditor of the city. He is a creditor with the payment confined to a particular fund when collected. Every ordinance produced in the case to fortify plaintiff's demand announces that the appropriations to pay the claims on which he sues are not payable until there is money in the city treasury derived from the collection of the public revenues to the credit of the appropriate fund—i. e., that from which the creditor is entitled to be paid. Whatever the character of the obligation, whether warrant certificate or claim, original or transferred, has impressed upon it this specific and limited right of payment and, subject to that limitation, the plaintiff acquired the claim on which he sues. What occurred, and perhaps is the case now, is that there is a large amount of unpaid claims against the city, payable out of appropriations of past years. This is due to shortages in the collection of taxes and perhaps to other causes. The plaintiff doubtless is the sufferer with others from the absence of funds in the treasury to pay him. Hence his appeal to the court to change the character of his debt and give him an absolute judgment against the city with interest. It is manifest he is entitled to no such relief."

Though these remarks did not lead up to a decree which the city can invoke as *res judicata*, they are none the less an authoritative expression of the court's opinion as to the status of the plaintiff as a creditor of the city. Had the corporation refused originally to recognize the existence and validity of these claims, and had the plaintiff sued the city to have the same to be decreed to be just and legal, it is obvious that a judgment to that effect would necessarily have had to contain at the same time a limitation upon a right of general payment. The judgment would have had to restrict plaintiff's right to enforcement within the limits of the contract and of the law governing the case. The plaintiff would have been unable to enforce the judgment against the city by general seizure under a writ of *fi. fa.* We are not advised of any circumstances having arisen since our judgment in the case which has had the effect of changing plaintiff's position from a qualified creditor to a general creditor. If it be true that the funds of the city applicable to the payment of claims of particular years out of the taxes of those years have been illegally diverted and misapplied to the payment of claims of later years, there may exist some remedy by which that wrong could be rectified, but the remedy would certainly not be to transform all of these qualified creditors into general creditors, with a right to obtain absolute general judgments against the city. If this result could not be brought about in favor of the mass of the holders of such claims, still less could it be successfully sought in favor of particular creditors, thus giving them superior rights to which they would not be entitled. If plaintiff be entitled to relief, we do not see that it would be at all necessary that he should be armed with a judgment in order that it should be made to serve as a basis for obtaining it.

For the reasons assigned:

It is hereby ordered, adjudged and decreed that the judgment appealed from, in so far as it sustains the plea of *res adjudicata*, be and the same is hereby annulled, avoided and reversed, and the judgment appealed from sustaining the exception of no cause of action be affirmed in so far as plaintiff seeks to obtain an absolute judgment upon his claim against the defendant. Costs of appeal to be borne by the appellee.